IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-00718-MJW-BNB

CH2M HILL, INC., et al.,

Plaintiffs,

v.

KEITH ALEXANDER,

Defendant.

---

**ORDER ON
PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM
(Docket No. 29)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**

This case is before this court upon the consent of the parties to conduct all proceedings and order the entry of judgment pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2. (Docket No. 27).

Now before the court is the plaintiffs' Motion to Dismiss Defendant's Counterclaims pursuant to Fed. R. Civ. P. 12(b)(6). (Docket No. 29). Defendant filed a response (Docket No. 42), and plaintiffs filed a reply (Docket No. 49). The court has considered these motion papers as well as the court file and applicable Federal Rules of Civil Procedure and case law. The court now being fully informed makes the following findings of fact, conclusions of law, and order.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the pleading as true and resolve all reasonable

inferences in the pleader's favor.  Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996).  A motion to dismiss pursuant to Rule 12(b)(6) alleges that the pleading fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "A [pleading] must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to relief that is plausible on its face.'"  Cutter v. RailAmerica, Inc., 2008 WL 163016 (D. Colo. Jan. 15, 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007)).  "While a [pleading] attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a [party's] obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp., 127 S. Ct. at 1974 (citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level."  Id.  "[A] [party] must 'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . .  Thus, the mere metaphysical possibility that *some* [party] could prove *some* set of facts in support of the pleaded claims is insufficient; the [pleading] must give the court reason to believe that *this* [party] has a reasonable likelihood of mustering factual support for *these* claims."  Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Bell Atlantic Corp., 127 S. Ct. at 1974).

In his Counterclaims, defendant raises two claims of breach of contract and alternatively violations based on breach of contract under the Employee Retirement Income Security Act ("ERISA") common law to enforce his rights under and pursuant to 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3).

Defendant's allegations include the following. In December 2000 defendant elected to participate in the deferred compensation plan known as the Restated and Amended Deferred Compensation Plan ("the Plan"), and he executed a Benefit Distribution Form under the Plan. On or about September 1, 2004, defendant was told that his employment would be involuntarily terminated subject to negotiation. His deferred compensation benefit and monies were not the subject of the negotiations. His deferred compensation monies were to remain in the Plan until his retirement. In 2006, however, the entire balance of his deferred compensation plan was paid out. A majority of that deferred compensation was in shares of stock in CH2M Hill, Inc., which were sold.

With regard to defendant's claimed violation of 29 U.S.C. § 1132, he alleges the following. Robert C. Allen negotiated the terms of plaintiff's termination and as a Plan Administrator and/or member of the Plan's Committee operated under a conflict of interest. As a result, the terms of defendant's termination were not fully disclosed in relationship to future payment under the Plan. In addition, the definition of "Termination Date" under the Plan was improperly interpreted in violation of the terms of the Plan and constitutes an abuse of discretion by the Plan, Plan Administrator, and Plan Sponsor.

As a result of these actions, defendant "has been damaged and suffered losses, including but not limited to, loss of investment opportunity, the increased value of the shares of stock, loss of his accumulation of investment on the stock and cash portions of his deferred account and being subjected to taxation of the proceeds of his account in the one taxable year rather than equal installments during five consecutive years and payment of a higher tax rate than he would have been assessed at his retirement age."

(Am. Answer and Counterclaim at 15, ¶ 38; 16, ¶ 44, and 17, ¶ 52).

Plaintiffs seek dismissal of all of defendant's counterclaims with prejudice for failure to state a claim upon which relief can be granted. They contend that the defendant's first two claims, for breach of contract, must be dismissed because the Plan expressly requires the very distribution of defendant's Plan account that he asserts to have constituted a breach and thus those claims are fatally implausible. Furthermore, they assert that defendant's third claim for relief under ERISA must fail because defendant failed to exhaust any of his Plan remedies, and he seeks forms of relief not provided by the statutory provisions upon which he relies.

Defendant, however, contends that the high burden and standard for a motion to dismiss[1] have not been met by plaintiffs and that he should be permitted to proceed on his counterclaims. He asserts that his counterclaims for breach of contract and breach of unilateral contract state claims for relief. He argues that the plain language of the Plan supports a different interpretation than plaintiffs' suggested version. Furthermore, defendant contends that if the Plan is a "Top Hat Plan," it is not subject to all the requirements of ERISA. According to defendant, whether the Plan is a Top Hat Plan cannot be determined without completion of discovery. In addition, he contends that extrinsic evidence exists as to the intent of the parties. Defendant also asserts that he has not failed to exhaust administrative remedies on his ERISA claim because the ERISA claim he asserts is not encompassed by the internal claims resolution procedures contained in the Plan. Therefore, he allegedly was not required to exhaust

---

[1]Defendant, however, misstates the current legal standard for consideration of a motion to dismiss pursuant to Rule 12(b)(6).

his administrative remedies on this claim. Defendant further asserts that the claims procedure outlined in the Plan would be futile. Finally, defendant contends that his claim for failure to pay distributions in accordance with the Plan is compensable under ERISA.

In their reply, plaintiffs assert that the counterclaims must be dismissed because the defendant has failed to exhaust his administrative remedies, that the defendant's claims fall squarely within the Plan's claim and appeal procedures, that even if the Plan is a "top hat plan," the requirement of exhaustion of remedies applies, that defendant entirely fails to show that exhaustion of intra-plan remedies would be futile, that defendant's claims are wholly implausible as a matter of law, and that the remedies defendant seeks are not allowed by ERISA.

This court finds that substantially for the reasons asserted by plaintiffs in their motion and reply, the defendant's counterclaims should be dismissed due to defendant's failure to exhaust his administrative remedies.

The Plan provides that it is to be administered by the "Compensation and Workforce Committee" ("the Committee") which, among other things, "may correct any defect, supply any omission, reconcile any inconsistency in the Plan or in any agreement entered into under the Plan, and reconcile any inconsistency between the Plan and any Agreement . . . ." (Docket No. 29-2 at 14, §§ 8.1 and 8.3). Furthermore, with regard to the interpretation of the Plan, the Plan provides that "[t]he determination of the Committee as to any disputed question arising under the Plain, including questions of construction and interpretation, shall be final, binding and conclusive upon all persons, including the Company, its shareholders, and all persons having any

interest in Participants' Accounts." (Docket No. 29-2 at 14, § 8.4). In addition, the Plan provides a process for submitting claims (§ 9.1), denial of claims (§ 9.2), and appeal procedures (§ 9.3). First, the Plain provides, in pertinent part that "[a] Participant or Beneficiary may submit a written request for a determination with respect to the amounts of benefits distributable. . . ." (Docket No. 29-2 at 15, § 9.1). The Plan further provides that "[t]he Committee shall make all determinations as to the right of any person to a benefit or the amount of such benefit under this Plan. The Committee shall provide adequate notice in writing to any claimant whose claim for benefits under the Plan has been denied. . . . ." (Docket No. 29-2 at 15, § 9.2). The Plan further provides an appeal procedure. (Docket No. 29-2 at 15, § 9.3).

Here, defendant did not avail himself of the claim and appeal process provided in the Plan. This court finds no merit to defendant's assertion that the Plan's claim resolution procedures do not encompass his particular dispute. As asserted by plaintiffs, defendant essentially claims that he was paid his Plan benefits prematurely, and consequently he has not received the quantum of benefits he would have received if he had stayed in the Plan longer. As noted above, the Plan's claim and appeals procedures apply to questions regarding "the right of any person to a benefit or the amount of such benefit under this Plan."

Under ERISA, a plaintiff must exhaust his administrative remedies before seeking judicial relief. See McGraw v. Prudential Ins. Co., 137 F.3d 1253, 1263 (10th Cir. 1998). "Although ERISA contains no explicit exhaustion requirement, . . . exhaustion of administrative . . . remedies is an implicit prerequisite to seeking judicial relief." Whitehead v. Oklahoma Gas & Elec. Co., 187 F.3d 1184, 1190 (10th Cir. 1999)

(quotation omitted)." The exhaustion requirement "derives from the exhaustion doctrine permeating all judicial review of administrative agency action, and aligns with ERISA's overall structure of placing primary responsibility for claim resolution on fund trustees." Id. (quoting McGraw, 137 F.3d at 1263). Any other procedure would permit "premature judicial interference" and "would impede those internal processes which result in a completed record of decision making for a court to review." Id. (quoting McGraw, 137 F.3d at 1263). "The doctrine is necessary to keep from turning every ERISA action, literally, into a federal case." Id. (quotation omitted). In general, the court may waive this exhaustion requirement on the basis of futility only "where resort to administrative remedies would be clearly useless." McGraw, 137 F.3d at 1264 (internal quotations omitted). Here, in his response to plaintiffs' motion to dismiss, defendant has made just a bare assertion of futility. This court concludes that defendant has not made the requisite showing the exhaustion requirement should be waived on the basis of futility.

Based upon these findings, it is unnecessary to address the other arguments raised in the motion to dismiss, response, and reply.

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED** that the plaintiffs' Motion to Dismiss Defendant's Counterclaims (Docket No. 29) is granted, and the defendant's counterclaims are dismissed without prejudice.

Date: March 12, 2009     s/ Michael J. Watanabe
   Denver, Colorado    Michael J. Watanabe
           United States Magistrate Judge